UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NGM INSURANCE COMPANY, )
)
    Plaintiff, )
)
v. ) Case No. 1:14-cv-01500 (LO/IDD)
)
EAGLE GENERAL CONTRACTING, )
LLC, *et al.*, )
)
    Defendants. )
_____)

### REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff NGM Insurance Company's ("NGM" or "Plaintiff") Motion for Entry of Default Judgment against Eagle General Contracting, LLC ("Eagle General") and Mohammad Abdul Rahim a/k/a Hazem Rahim ("Rahim") (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 55(b)(2). (Dkt. No. 14.) After Defendants, or a licensed attorney for the same, failed to appear at the April 10, 2015 hearing on the Motion, the undersigned Magistrate Judge took this matter under advisement. Upon careful consideration of the Complaint, Plaintiff's Motion for Default Judgment, and the supporting documentation thereto, the undersigned Magistrate Judge makes the following findings and recommends that Plaintiff's Motion be GRANTED in part and DENIED in part.

### I.    INTRODUCTION

On May 9, 2007, Defendants entered into an Agreement of Indemnity (the "AI") with the Plaintiff. (Compl. ¶ 6.) In reliance on the AI, Plaintiff, as surety, issued performance and payment bonds for a number of public construction projects at the Washington Dulles International Airport in Dulles, Virginia ("Dulles Airport"). (Compl. ¶¶ 7-9.) Pursuant to the

1

terms of the AI, Defendants, jointly and severally, agreed to exonerate and indemnify NGM from and against all claims, demands, liabilities, losses, and expenses incurred in connection with the issuance of these bonds. (Compl. ¶ 6.) As a result of Defendants' performance issues on the Dulles Airport contract work, Plaintiff began receiving claims against the payment and performance bonds due to unpaid amounts owed to Eagle General's suppliers and subcontractors. (Compl. ¶¶ 9-11(a)-(c).)

Plaintiff alleges that it has satisfied these claims, but that Defendants have failed to indemnify and reimburse NGM as agreed. (Compl. ¶¶ 11-14.) Accordingly, on October 29, 2014, NGM filed the Complaint against the Defendants, alleging breach of contract and seeking damages for Defendants' failure to fulfill their obligations under the AI. (Dkt. No. 1.)

### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000. (Compl. ¶ 4.) NGM is a Florida corporation with its principal place of business in Florida. (Compl. ¶ 1.) At all times pertinent to this action, Eagle General was a Virginia limited liability company, with its principal place of business in Falls Church, Virginia. (Compl. ¶ 2.) Rahim is an individual citizen of the Commonwealth of Virginia and, at times pertinent to this action, a resident of Falls Church, Virginia. (Compl. ¶ 3.) Thus, because the parties are completely diverse and the amount in controversy has been satisfied, this Court has valid subject matter jurisdiction.

This Court may also exercise personal jurisdiction over the Defendants. Eagle General is a Virginia limited liability company and maintains or maintained a principal place of business in this district. Additionally, while Plaintiff appears to be unaware of Rahim's current address, this

need not deprive the Court of exercising personal jurisdiction over him. In executing the AI, Rahim listed Falls Church, Virginia addresses in the signature block for both Defendants, and the Defendants were properly served with process in Virginia. (Compl., Ex. 1 at 6; Dkt. Nos. 5-9.)

Moreover, even presuming that Rahim was no longer a Virginia resident at the time the Complaint was filed, this Court is authorized to exercise personal jurisdiction over him, because he has transacted business and contracted to supply goods or services in this forum and the Plaintiffs' claims arise out of this conduct. Va. Code Ann. § 8.01-328.1(A). Specifically, Rahim signed the AI in his individual capacity and in his capacity as Eagle General's agent, and this agreement secured construction work in Virginia. (Compl. ¶ 8(a)-(c); Ex. 1.) Therefore, the undersigned finds that this will suffice for the purpose of establishing personal jurisdiction over both Defendants.

Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. (Compl. ¶ 5.)

**B. Service of Process**

Rule 4(h) governs service upon corporations, partnerships, and other unincorporated associations, and allows service "in the manner prescribed by Rule 4(e)(1) for serving an individual; or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1). Subdivision (e)(1) provides that service may effectuated by, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]"

Fed. R. Civ. P. 4(e)(1). Therefore, service in this case was proper if it was executed in accordance with Virginia law.

### *Eagle General*

Section 12.1-19.1 of the Virginia Code allows service of process on the clerk of the State Corporation Commission ("SCC") "whenever by statute the clerk of the Commission is appointed or deemed to have been appointed the agent of any individual, corporation, limited partnership or other entity . . . ." Va. Code Ann. § 12.1-19.1(A). Service on the clerk is made "by leaving two copies of the process for each defendant . . . in the office of the clerk of the Commission." *Id.* Additionally, § 13.1-1018(B) states:

> Whenever a domestic or foreign limited liability company fails to appoint or maintain a registered agent in this Commonwealth, or whenever its registered agent cannot with reasonable diligence be found at the registered office, then the clerk of the Commission shall be an agent of the limited liability company upon whom service may be made in accordance with § 12.1-19.1.

Va. Code Ann. § 13.1-1018(B)

Plaintiff does not allege that Eagle General has a registered agent in Virginia; however, as managing member, Rahim is eligible to receive service of process on behalf of the company. (Compl. ¶ 3.) It appears that, despite exercising due diligence, Plaintiff could not locate Rahim. (*See* Dkt. No. 9.) Therefore, the Virginia SCC is an appropriate statutory agent for service of process on behalf of Eagle General.

On November 20, 2014, Eagle General was served with copies of the Summons and Complaint via service on the Secretary of the Virginia SCC, pursuant to Va. Code Ann. § 12.1-19.1. (Dkt. No. 7.) On November 25, 2015, the Clerk of the Commission issued a Certificate of Compliance certifying that a copy of the Summons and Complaint was sent by U.S. Mail to Eagle General's last known address in Virginia. (Dkt. Nos. 5-6.) The Certificate of Compliance

was filed with the Clerk of this Court on November 28, 2014. (*Id.*) Thus, the undersigned finds that Eagle General was properly served in accordance with Virginia law.

### *Rahim*

Va. Code Ann. § 8.01-329(A) provides that when personal jurisdiction is authorized by Chapter 9 of the Virginia Code, service of process for an individual may be made on the Secretary of the Commonwealth of Virginia (the "Secretary"), who is "deemed to be the statutory agent of such person."[1] On November 20, 2014, a copy of the Summons and Complaint was delivered to the Secretary, pursuant to Fed. R. Civ. P. 4(e)(1) and § 8.01-329. (Dkt. No. 8.) On December 5, 2014, the Clerk in the Office of the Secretary issued a Certificate of Compliance certifying that a copy of the Summons and Complaint was forwarded by certified mail to Rahim's last known address in Virginia. (Dkt. No. 9; Mot. Default J. ¶ 5.) The Certificate of Compliance was filed with the Clerk of this Court on December 9, 2014. (Dkt. No. 9.) Therefore, the undersigned finds that service was properly effectuated as to Rahim in accordance with Virginia law.

### C. Grounds for Entry of Default

Plaintiff filed its Complaint on November 7, 2014. (Dkt. No. 1.) Defendants failed to appear, answer, or file any other responsive pleading in this matter. On January 29, 2015, Plaintiff filed a Motion for Entry of Default with the Clerk of Court. (Dkt. No. 11.) On February 5, 2015, the Clerk entered default against both Defendants. (Dkt. No. 12.) On March 13, 2015, Plaintiff filed its Motion for Default Judgment, and the Court held a hearing on the matter on April 10, 2015. (Dkt. Nos. 14, 19.) After Defendants failed to appear at the April 10, 2015 hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report

---

[1] As stated above, this Court may exercise personal jurisdiction over Rahim, pursuant to § 8.01-328.1, which is located within Chapter 9 of the Code.

and Recommendation.

## II.    **FINDINGS OF FACT**

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that the Plaintiff has established the following facts. NGM, a Florida corporation, is authorized to engage in the surety business in the Commonwealth of Virginia. (Compl. ¶ 1.) Eagle General is a Virginia limited liability company owned by Mohammad Abdul Rahim a/k/a Hazem Rahim, the company's managing member. (Compl. ¶¶ 2-3.) On May 9, 2007, Defendants entered into a written AI with NGM. (Compl. ¶ 6; Ex. 1.) Pursuant to the AI, Defendants, acting as contractor and indemnitor, agreed to hold themselves jointly and severally liable for any losses sustained or incurred in connection with bonds issued by NGM. (Compl. ¶ 6.) Specifically, the AI's terms provide:

> THIRD: The CONTRACTOR [Eagle General] and INDEMNITORS [Rahim] shall exonerate, hold harmless, indemnify and keep indemnified the SURETY [NGM] from and against any and all claims, demands and liability for losses, costs and expenses of whatsoever kind or nature, including court costs, counsel fees, investigative costs, and from and against any and all other such losses and expenses which the SURETY may sustain or incur:
> 
> (A)   By reason of having executed or procured the execution of Bonds;
> (B)   By reason of the failure of the CONTRACTOR or INDEMNITORS to perform or comply with any of the covenants or conditions of this agreement;
> (C)   In enforcing any of the covenants or conditions of this Agreement
> (D)   In making any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid bond premium in connection with any Bond;
> (E)   In prosecuting or defending any action or claim in connection with any Bond, whether SURETY at its sole option elects to employ its own counsel, or permits or requires CONTRACTOR and INDEMNITORS to make arrangements for the SURETY'S legal representation.
> 
> Payment shall be made to the SURETY by the CONTRACTOR and INDEMNITORS as soon as liability exists or is asserted against the SURETY, whether or not the SURETY shall have made any payment thereof. Such payment shall be either equal to the amount of any reserve set by the SURETY, or equal to

such amount as the SURETY, in its sole judgment, shall deem sufficient to protect it from loss.

(Compl., Ex. 1 at 2.)

In reliance on the AI, NGM issued performance and payment bonds securing "a number of public construction projects" at Dulles Airport. (Compl. ¶¶ 7-9.) These bonds named Eagle General as principal and co-obligor, and the Metropolitan Washington Airports Authority ("MWAA") as obligee. (Compl. ¶ 8; Exs. 2A-2B, 3A-3B, 4A-4B.) These bonds—Bond Nos. S-634042, S645399, and S645394—guaranteed the completion of contract work by Defendants on construction projects for MWAA.[2] (Compl. ¶ 8(a)-(c).)

Plaintiff alleges that there were performance issues in connection with Eagle General's contract work, including the failure to pay subcontractors, laborers, and materialmen. (Compl. ¶ 9.) As a result, NGM, as surety, has been presented with numerous claims[3] against the bonds, and has been called upon to perform pursuant to the AI's terms. (Compl. ¶¶ 9-10; Mot. Default J. ¶ 2.) Plaintiff asserts it has received and paid the claims against the payment and performance bonds issued on Eagle General's behalf, but that Defendants' have failed to indemnify and reimburse NGM as agreed. (Compl. ¶¶ 11-14; Mem. Supp. Default J. at 2.)

NGM asserts that it has expended $404,856.58 to satisfy claims under the bonds; $31,540.75 in consultants' fees, costs, and expenses through May 7, 2012; and, $59,678.06 in attorney's fees, costs, and expenses through November 18, 2013. (Compl. ¶ 12.) Plaintiff also

---

[2] Bond No. S-634042 is dated May 9, 2007, in the amount of $4,048,613.75; Bond No. S645399 is dated July 28, 2008, in the amount of $697,275.00; and, Bond No. S645394 is dated June 4, 2008 in the amount of $137,700.00. (Compl. ¶ 8(a)-(c).) The value of Bond No. S645394 was later increased to $195,696.49 by virtue of issuance of bond riders dated January 29, 2009. (Compl. at ¶ 8(c).)

[3] The claimants against the bonds are: Heller Electric; Jett Mechanical; National Fire Protection; Sunbelt Rentals, Inc.; Wm. H. Gordan Associates Surveyors; Diamond Welding; Dubrook Concrete; Encon Consulting; Genoa Corporation; Grove Graphics, LLC; J&R Roofing; Lyon Workspace; Luck Stone; Matrix Mechanical; Mid-Atlantic Utility Locating; Phoenix Concrete; R&R Blinds; Roofers, Inc.; Structural Steel; Theros Equipment; and, Zero Defects Mechanical. (Compl. ¶ 11(a)-(c).)

anticipates incurring additional consultant and attorney's fees, costs, and expenses in connection with its obligations as surety. (*Id.*) Despite Plaintiff's demand for Defendants to collateralize, exonerate, and indemnify NGM for these losses, Defendants have failed to honor the terms of the AI. (Compl. ¶ 14.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. *See Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). Foremost, a court must be satisfied that the complaint states a legitimate cause of action. *See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to the plaintiff where the plaintiff failed to state a claim). A defendant in default concedes the factual allegations of the complaint. *See, e.g., Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (noting default judgment has the effect of admitting factual allegations in the complaint). Default does not, however, constitute an admission of the adversary's conclusions of law, and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.* at 780.

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of

Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679.)

### *Breach of Contract*

This Court has jurisdiction solely on the basis of diversity of citizenship, and must apply the choice of law rules of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623-24 (4th Cir. 1999). Unless the parties expressly agree to the contrary, Virginia applies the terms of a contract according to the law of the place where the contract was made. *Hudson Ins. Co. v. Persaud Cos., Inc.*, No. 1:13-cv-3, 2013 WL 6911683, at *6 (E.D. Va. Dec. 12, 2013) (citing *C.I.T. Corp. v. Guy*, 195 S.E. 659, 661 (Va. 1938), *report and recommendation adopted*, 2014 WL 31286 (E.D. Va. Jan. 3, 2014). In this case, the AI shows that Defendants executed the contract in Anne Arundel County, Maryland. (Compl., Ex. 1 at 7.) Therefore, Plaintiff's claims will be interpreted in accordance with Maryland law.[4]

Plaintiff seeks to recover on a breach of contract claim against the Defendants for failure to fulfill their obligations pursuant to the AI. (Compl. at 8-9.) Under Maryland Law, in order to support a breach of contract claim, a plaintiff must show "that the defendant owed the plaintiff a

---

[4] Plaintiff acknowledges that there is no choice of law clause in the AI, and it applies Virginia law in its Motion as the law of the place where Defendants would likely perform the contract. (Mem. Supp. Default J. at 3.) The undersigned notes that, even if Virginia law were applied, the findings in this Report would be the same.

contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001) (citing *Cont'l Masonry Co., Inc. v. Verdel Const. Co., Inc.*, 369 A.2d 566, 569 (Md. 1977)). "It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages." *Taylor*, 776 A.2d at 651.

When a surety and principal have entered into an express indemnity agreement governing their rights "the surety's right to indemnity is determined by the language of the contract of indemnity." *Ulico Cas. Co. v. Atl. Contracting & Material Co.*, 822 A.2d 1257, 1266 (Md. Ct. Spec. App. 2003), *aff'd*, 844 A.2d 460 (Md. 2004). In other words, a surety is entitled to stand upon the letter of his contract. *Fid. & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983) (citation omitted) (internal quotation marks omitted). "When [a] court finds the language of a contract to be clear and unambiguous, the court must give effect to its plain meaning. *Ulico*, 822 A.2d at 1266 (citing *Auction & Estate Representatives., Inc. v. Ashton*, 731 A.2d 441, 444 (Md. 1999)).

Here, Plaintiff has alleged sufficient facts demonstrating that Defendants entered into a legally enforceable contract, and that obligations or duties arise from that agreement. The terms of the AI are also sufficiently clear such that the Court may find that the contract adequately governs the parties' respective rights and liabilities. The AI contains the Defendants' signatures, acknowledged before a notary public, and outlines their responsibility to indemnify NGM. (Compl., Ex. 1 at 7.) Specifically, Defendants agreed to "exonerate, hold harmless, indemnify and keep indemnified [NGM] from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature" in connection with having issued the performance and payment bonds. (Compl., Ex. 1 at 2.) Additionally, the AI reserves Plaintiff's

"exclusive right in its name or in the name of [Eagle General] to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any bond or to take whatever other action it may deem necessary, expedient or appropriate" and that such a determination "shall be binding and conclusive upon [Defendants]." (Compl., Ex. 1 at 3.)

NGM maintains that it has met its obligations by making payments on claims against the bonds, and has furnished copies of these check payments and settlement agreements. (Compl. ¶¶ 10-12; Dkt. No. 15-3.) NGM also asserts that it has incurred various expenses, including consultant's fees and attorney's fees and costs, in satisfying its obligations under the AI. (Compl. ¶¶ 10-12; Dkt. Nos. 15-4, 15-5.) Thus, the undersigned finds that Plaintiff has pled sufficient facts establishing Defendants' breach of their contractual obligations to indemnify and reimburse NGM for its costs and expenses pursuant to the AI.

## IV. REQUESTED RELIEF

Plaintiff requested initially $496,075.39 in damages in its prayer for relief, plus future consultant and attorney's fees, costs, and expenses, as well as pre- and post-judgment interest. (Compl. at 8-9.) Plaintiff's Motion for Entry of Default Judgment now specifies that it requests entry of judgment against Defendants in the amount of $495,414.34,[5] which includes $404,456.00 for the principal amount it has paid in claims under various bonds and "its costs, expenses, and consultant and attorney's fees . . . which, as of March 6, 2015, total $90,958.34— as well as attorney's fees, costs, and expenses yet to be incurred in this matter and post-judgment interest. (Mot. Default J. ¶¶ 9, 11.) Plaintiff also notes that it reserves the right to "pursue recovery for its costs, fees and expenses in the future and expressly states that the judgment sought in this matter does not include a request for adjudication of any future losses by NGM."

---

[5] Plaintiff does not explain this $661.05 difference, although a review of the check payments submitted indicates that a payment made to subcontractor Matrix Mechanical is $400.57 less than what was originally stated in the Complaint. (Montecalvo Decl. ¶ 9(b); Complaint ¶ 11(b).)

11

(Mot. Default J. ¶ 10.) Plaintiff has submitted the declaration of Anthony P. Montecalvo, National Bonds Claim Manager for NGM, ("Montecalvo Decl.") in support of this request. (Dkt. No. 15-1.)

### A. Contractual Indemnification (Damages)

Plaintiff has established the existence and terms of the AI, including Defendants' agreement to indemnify NGM for its losses. Additionally, Defendants agreed that "the vouchers or other evidence of any such payments made by the SURETY shall be prima facie evidence of the fact and amount of the liability to the SURETY." (Compl., Ex. 1 at 2.) Furthermore, Mr. Montecalvo states that Plaintiff retained consultants in order to assist with "investigation, review, analysis, adjustment and resolution of the contract payment and performance bond claims" against the bonds issued by NGM on Eagle General's behalf. (Montecalvo Decl. ¶ 7.)

Plaintiff has complied with its responsibilities under the AI by investigating and responding to these claims from Eagle General's subcontractors and suppliers, and by providing detailed records regarding its liabilities and expenses incurred. (Mem. Supp. Default J. at 5; Montecalvo Decl. ¶¶ 9-10.) Defendants' breach resulted in NGM, as surety, incurring these damages. Therefore, Defendants are liable to Plaintiff for the full amount of losses in this action.

Based on the undersigned's calculations, Plaintiff is entitled to $435,996.75, excluding attorney's fees and costs. This figure accounts for $404,456.00 in payments made on claims against the bonds, and $31,540.75 in consultant's fees and expenses.

### B. Attorney's Fees and Costs

Plaintiff requests $59,417.59 in attorney's fees and costs through March 6, 2015. (Mot. Default J. ¶ 9.) Mr. Montecalvo avers under oath that this figure is an accurate representation of the expenses incurred in this action, with $56,200.09 billed by WallacePledger, PLLC and

12

$3,217.50 by Setliff & Holland, PC. (Montecalvo Decl. ¶ 12.) Additionally, he explains that NGM seeks to recover $2,376.41 in attorney's fees incurred while litigating a bond claim brought by Alonzo Ours Construction ("Alonzo Ours") in Loudon County Circuit Court. (Montecalvo Decl. ¶ 14; Ex. 5.) The Circuit Court awarded Plaintiff $5,743.65 in attorney's fees, costs, and expenses through April 6, 2012, while reserving NGM's right to pursue additional claims for indemnity for losses incurred after this date. (*Id.*) Mr. Montecalvo further avers that the $2,376.41 sum has not been awarded to NGM in any other judgment. (*Id.*)

Indemnity agreements such as the AI executed between Plaintiff and the Defendants have been found to entitle the surety to recover reasonable attorney's fees, costs, and expenses. *See Bristol Steel*, 722 F.2d at 1166. In this case, the AI explicitly contemplates this recovery, and Plaintiff has provided counsels' time sheets in support of its request. (Compl., Ex. 1 at 2; Dkt. Nos. 15-5, 23.)

Having examined the documentation in support of Plaintiff's request for attorney's fees and costs, the undersigned finds that Plaintiff is entitled to $61,764.00, which includes the outstanding fees incurred on the Alonzo Ours claim. The undersigned has also subtracted $30.00 billed by an individual with the initials "PEH," whom Plaintiff does not identify in its Motion or documents in support of fees. (Dkt. No. 23, Ex. 2 at 78-82.) Therefore, $61,764.00 is reasonable compensation for the work necessarily expended to enforce Plaintiff's rights.

Finally, while Plaintiff also requests "attorney's fees, costs, and expenses yet to be incurred in this matter," the record before the Court provides little guidance on this account. (Mot. Default J. ¶ 11.) Plaintiff does not discuss either the amount of time counsel anticipates expended or the fees NGM will incur in connection with this matter. Consequently, without more information, the undersigned recommends against awarding future fees at this time.

### C. Post-Judgment Interest

In diversity cases, awards of post-judgment interest are governed by federal law. *Hitachi*, 166 F.3d at 633 (citing *Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir. 1989)). The applicable federal statute provides, in relevant part, that:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a). As a matter of law, Plaintiff is entitled to an award of post-judgment interest and, therefore, the undersigned recommends such an award pursuant to 28 U.S.C. § 1961(a).

### V. RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends that the Plaintiff's Motion for Entry of Default Judgment be **GRANTED in part and DENIED in part**. The Motion should be granted as to entry of default judgment against Defendants Eagle General Contracting, LLC and Mohammad Abdul Rahim a/k/a Hazem Rahim, jointly and severally, on Count I of the Complaint. Accordingly, the undersigned Magistrate Judge recommends that an Order be entered awarding Plaintiff compensatory damages in the amount of $497,760.75, which includes attorney's fees and costs as recommended herein, plus interest at the legal rate until paid. The Motion should be denied in all other respects.

## VI. NOTICE

By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record and Defendants at the following addresses:

Mohammad Abdul Rahim a/k/a Hazem Rahim
2230 George C. Marshall Drive, Unit #PH-B
Falls Church, VA 22043

Eagle General Contracting, LLC
2230 George C. Marshall Drive, Unit #PH-B
Falls Church, VA 22043

Secretary of the Commonwealth, Statutory Agent
c/o Mohammed Abdul Rahim a/k/a Hazem Rahim
1111 E. Broad Street, 4th Floor
Richmond, VA 23219

/s/
Ivan D. Davis
United States Magistrate Judge

September 1, 2015
Alexandria, Virginia

15